1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEXANDRE B. ZOLOTOVITSKI,

                Plaintiff,

     v.

HERE NORTH AMERICA LLC,

                Defendant.

CASE NO. 2:19-cv-01964-RAJ-BAT

**REPORT AND
RECOMMENDATION**

Defendant HERE North America, LLC ("HERE") moves for summary judgment pursuant to Fed. R. Civ. P. 56, on Plaintiff Alex Zolotovitski's discrimination claims brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, and Washington Law Against Discrimination ("WLAD") claims. Dkt. 55. Plaintiff claims that he was terminated from his position as Senior Data Scientist at HERE because of his age. Dkt. 22 (Second Amended Complaint). Plaintiff opposes the motion. Dkt. 60.

Based on a careful review of the motion, briefs, and admissible summary judgment evidence, the undersigned recommends that HERE's motion for summary judgment be **granted**.

<u>FACTS</u>

HERE is the North American subsidiary of a multi-national company that provides companies and individuals with mapping and location data and related services, such as the navigation systems found in many automobiles and other applications. Dkt. 57, Declaration of Neal Oman ("Oman Dec."), ¶ 2. This case arises out of a reduction in force ("RIF") that took

REPORT AND RECOMMENDATION - 1

place at HERE in 2018. Dkt. 56, Declaration of Michael A. Warner, Ex. A (Zolotovitski

Deposition "AZ Dep."), Deposition Exhibit 06 ("Ex. AZ [06]").

Plaintiff was employed as a Principal Data Scientist at HERE's Seattle Washington

research lab. Dkt. 57, Oman Dec., at ¶ 4. His manager, Neal Oman, was Director of Data Science

for the research lab. *Id*. at ¶ 11. Before joining HERE, Plaintiff and Oman were employed by

Medio Systems ("Medio"), a technology company that specialized in predictive analytics that

HERE acquired in 2014. *Id*.; Dkt. 56, AZ Dep. at 10:15-17. Oman also was Plaintiff's manager

at Medio. *Id*.

A.     Oman's Assessment of Plaintiff's Performance

Oman managed a team of 10 to 12 employees, including Plaintiff. Dkt. 57, Oman Dec. at

¶ 11. This team was responsible for conducting and implementing advance research and using

applied machine-learning to improve HERE's map making processes. *Id*. at ¶ 12.

Oman generally found Plaintiff to be a technically competent employee, often working

on extremely complex work. Dkt. 57, Oman Dec. at ¶ 4. However, after HERE acquired Medio,

Oman's team's work became more collaborative and focused on practical product development

and Plaintiff exhibited repeated difficulties in adjusting to the collaborative and results oriented

environment at HERE. *Id*. at ¶¶ 4, 12.

As his direct manager, Oman completed annual written performance assessments for

Plaintiff for the years 2014 through 2016. The Company's performance assessment process

required managers to evaluate employees under two dimensions: (1) "Overall Achievement

(What)," which assessed the results that the employee had achieved over the last year, and (2)

"Overall Relationships (How)," which assessed how the employee had achieved those results,

with a particular emphasis on how the employee related to and worked with others. Dkt. 56, AZ

1   Dep. Ex. AZ 01; Dkt. 57, Oman Dec. at ¶ 5.

2          In his 2014 Performance Assessment, Oman rated Plaintiff as achieving "valued

3   performance" overall, under both the "What" and "How" dimensions, which was the second

4   lowest rating on a four-category scale. Although this was a minimally acceptable level of

5   performance, Oman cautioned Plaintiff that he needed to have greater "respect for and

6   willingness to work within the existing infrastructure or exert proper and realistic influence . . .

7   [because he needed] to improve in managing his own and the team's purpose and making sure

8   his efforts aligned with how the team works." Dkt. 56, Dep. Ex. AZ 01. Oman further advised

9   Plaintiff that his team did not have the "luxury of simply inventing a new approach and throwing

10  over to others to implement." *Id*. Oman also observed significant "issues associated with actually

11  deploying the results of [Plaintiff's] work into [HERE's] production systems" because he has not

12  "constructed [the work] in such a way as to be usable in the existing scoring and operational

13  infrastructure." *Id*. In his Overall Performance rating comments, Oman noted that Plaintiff "is the

14  senior scientist on the team" and his contributions were valuable, yet Plaintiff could

15  "significantly improve [his] contribution to the team's success by making sure [his] contributions

16  are easily usable within the context of the operational environment in which" HERE worked. *Id*.

17         In his deposition, Plaintiff acknowledged that the written assessment was consistent with

18  Oman's verbal assessment of his performance. Plaintiff stated that he created a system that "was

19  not deployed because [he] did not care about it" and "so, again, [he] was switched to another

20  project before end of this project" and was no longer part of the team that worked on

21  implementation. Dkt. 56, AZ Dep. at 22:10-15. However, Plaintiff explains that his removal

22  from the project was at the direct order of Oman because the job was "too easy" for him. Dkt. 60,

23  p. 9.

In the 2015 Performance Assessment, Oman rated Plaintiff as "Does Not Meet" expectations on the "How" dimension. Dkt. 57, Oman Dec. at ¶ 6; Dep. Ex. AZ 02 at 7. Oman noted that "while Alex was very effective when involved in projects that allowed him to isolate himself and work alone, he needed to work to improve his contribution to improving others performance and making the team more effective." *Id*.

On or about March 9, 2016, Plaintiff told Oman he disagreed with his 2015 Performance Assessment and resulting bonus and asked what he could do to improve his performance. Dkt. 57, Oman Dec. at ¶ 7. After this conversation, Oman sent Plaintiff an e-mail explaining what Plaintiff needed to do to improve his performance on the "How" dimension. *Id*.; Dep. Ex. AZ 04.

Oman rated Plaintiff as "Consistently Meets" expectations in the dimension of "Overall Relationships (How)" in his 2016 Performance Assessment but noted that "Alex continued to struggle with this aspect of his performance in 2016." Dkt. 57, Oman Dec. at ¶ 8. Oman further commented that, "[G]enerally speaking Alex meets expectations for his job grade level for 2016, improving somewhat on his performance in 2015. That said, given his job grade in [sic] Alex should be able to improve his impact substantially in this area." *Id*.; Dep. Ex. AZ 03.

According to Oman, Zolotovitski's performance did not improve in 2017. Dkt. 57, Oman Dec. at ¶ 9. Oman observed that Plaintiff "continued to struggle on projects where he needed to work constructively as a member of a team or when he needed to come up with practical solutions conform his work product to preexisting HERE procedures and platforms." *Id*. These were the same issues Oman had consistently noted since he and Plaintiff joined HERE. *Id*. at ¶¶ 4-9. The work at HERE was expected to be "more collaborative in nature" compared to the work at Medio and required Plaintiff to develop systems and solutions that conformed to HERE's

1    existing practices and technical infrastructure. While Plaintiff would often come up with what he

2    believed to be the "ideal" solution, the solution was not practical as it could not be effectively

3    implemented within HERE's existing technical platforms and infrastructure. This created tension

4    between him and other employees, made it difficult to assign him projects, and multiple team

5    members informed Oman that they were not willing to work with Plaintiff anymore. As a result,

6    Oman was having difficulties finding projects for Plaintiff to work on that did not require him to

7    work with other employees or in which his strengths could be fully utilized. *Id.*, ¶ 9.

8        Oman further testified that the other Principal Data Scientists on his team were as

9    technically competent and skilled as Plaintiff but did not have the same difficulties working with

10   others or conforming their work to HERE's policies and business needs. As a result, Oman was

11   contemplating putting Plaintiff on a performance improvement plan but had not formally done so

12   prior to the RIF. Dkt. 57, Oman Dec., ¶ 10.

13   B.    HERE's Reduction in Force

14       In February 2018, before Oman completed Plaintiff's Performance Assessment for

15   2017, HERE informed Oman that it would be implementing a company-wide RIF due to the

16   need to reduce costs and conform HERE's workforce to changes in the Company's business.

17   Dkt. 57, Oman Dec. at ¶ 11. Oman was instructed that he needed to reduce his team's payroll

18   costs by one headcount. *Id.*

19       Oman selected Plaintiff for the RIF based on Oman's comparative evaluation of

20   performance and skillsets of his team members. Due to Plaintiff's ongoing performance issues,

21   he was the lowest performing employee and was deficient in the skillsets of being able to work

22   collaboratively and to develop systems and solutions that conformed to HERE's existing

23   practices and technical infrastructure. Dkt. 57, Oman Dec. at ¶ 12. Even without the need to

REPORT AND RECOMMENDATION - 5

reduce his team's headcount, Oman anticipates that he would ultimately have recommended that Plaintiff be terminated due to his performance issues absent dramatic improvement in his performance. *Id*.

Plaintiff was informed he was selected for the RIF in a meeting with Oman and a Human Resources Representative. Dkt. 56, AZ Dep. at 65:23-67:19. At the meeting Plaintiff received a copy of a separation agreement along with a disclosure statement pursuant to the Older Workers Benefit Protection Act ("OWBPA"). *Id*. at 70:15-21; Ex. AZ 06. Via the agreement, HERE offered Plaintiff $36,088.86 in severance, two months of subsidized COBRA health insurance, and outplacement services in return for an agreement to waive and release all claims against HERE. *Id*. The accompanying Disclosure Statement disclosed that "Employees were selected for termination based on the following decisions:

- Eliminate certain single incumbent roles due to redundancy or other cost-reduction need;
- Significant change in scope of functions and duties;
- Consolidate roles (multiple incumbents assessed using comparative evaluation of performance/skillset);
- Strategic product decision/market needs;
- Move work to different location;
- Increase manager spans of control/remove organization layers; and
- Ramp down of IoT product."

Dkt. 56, Warner Dec., Ex. AZ 06 at p. 10. The Disclosure Statement also identified the positions and ages of all employees who were selected and not selected for termination within the applicable "decisional unit," which consisted of all HERE North America employees, except those in Corporate Development, Human Resources, Legal, Marketing, and Communications departments. *Id*. Of the 1,753 HERE employees within Oman's decisional unit, 76 employees age 40 and older and 30 employees under age 40 were selected for termination. Dkt. 56, Warner Dec., AZ Dep., Exs. AZ 06 and 24.

REPORT AND RECOMMENDATION - 6

LEGAL STANDARDS

A party is entitled to summary judgment if there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. "A material fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). A party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986); *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (genuine issues are not raised by mere conclusory allegations).

Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. *See U.A. Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.1995). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

DISCUSSION

A.    Need for Further Discovery

In his opposition to HERE's motion, Plaintiff asks the Court to "continue the hearing to conduct further discovery." Dkt. 60, p. 1. In response, HERE correctly points out that Plaintiff

has not made the requisite showing under Fed. R. Civ. P. 56(d) that additional discovery would result in the discovery of information material to the issues raised in HERE's motion. Dkt. 62, pp. 6-7 (original and extended discovery deadlines have passed; no discovery motion filed; lateness of request is after the filing of a summary judgment motion and will prejudice Defendant; and Plaintiff has failed to submit an affidavit explaining what "specific facts" additional discovery would reveal). The Court agrees that under these circumstances, Plaintiff is not entitled to additional discovery.

In an improperly filed surreply, Plaintiff clarifies that he does not need additional discovery but rather, that he requested a continuance because he "believed that the Defendant" needed additional proof of its position. Dkt. 63.[1] Accordingly, the issue is moot.

B.    ADEA Discrimination

The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." This prohibition applies to "individuals who are at least 40 ... but less than 70 years of age." 29 U.S.C. § 631(a). However, the statute also provides that it is not unlawful for an employer to base employment decisions on "reasonable factors other than age," or to discharge an individual "for good cause." 29 U.S.C. § 623(f)(1), (3). The plaintiff has the ultimate burden of proving that age was a "determining factor" in the employer's allegedly unlawful conduct. *Kelly v. American Standard, Inc.*, 640 F.2d 974, 984 (9th Cir. 1981).

---

[1] Plaintiff's surreply filed "in further opposition" (Dkt. 63) is improper. A surreply is "strictly limited" to a motion to strike materials in a reply brief (see LCR 7(g)), and therefore Plaintiff's surreply has not otherwise been considered.

REPORT AND RECOMMENDATION - 8

The shifting burden of proof applied to a Title VII discrimination claim also applies to claims arising under ADEA. *Palmer v. The United States of America*, 794 F.2d 534, 537 (9th Cir. 1986). The plaintiff must first establish a prima facie case of discrimination, which, for the purposes of summary judgment, "refers to the plaintiff's burden of 'producing enough evidence to permit the trier of fact to infer the fact at issue.'" *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981)).

Establishment of a prima facie case operates to shift the burden to the employer to produce some evidence that it had legitimate, nondiscriminatory reasons for the employment decision. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). If the employer "carries this burden of production, the plaintiff must prove by a preponderance of all the evidence in the case that the legitimate reasons offered by the defendant were a pretext for discrimination." *Id.* While the burden shifts, "'[t]he ultimate burden of persuading the trier of fact that the defendant ... discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

A plaintiff alleging discrimination under ADEA may proceed under two theories of liability: disparate treatment or disparate impact. *Palmer*, 794 F.2d at 536. Proof of disparate treatment requires a showing that the employer treats some people less favorably than others because of their age. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977). In contrast, discriminatory motive or intent need not be shown under a disparate impact theory, which challenges facially neutral employment practices which have a discriminatory impact. *Id.* However, under the latter theory the plaintiff must actually prove the discriminatory impact at issue, rather than merely an inference of discriminatory impact. *Palmer*, 794 F.2d at 536.

1    In his Second Amended Complaint, Plaintiff asserts that his analysis of "HERE's

2    disclosure statement with ages of all employees selected and not selected for RIF 29 U.S.C. §

3    623-(10) (H)(ii) proved severe adverse effect of age discrimination based on age on employees

4    over 40 y.o., and even more severe on employees over 60 y.o., because selection rate was much

5    higher for older employees." Dkt. 22 at p. 2. He also asserts that "[N]either of announced

6    (criteria) of selection for the RIF were applicable for me." *Id*.

7    The Court has analyzed Plaintiff's claims under both a disparate treatment theory of

8    discrimination – for which he must prove that he was a victim of "intentional" discrimination –

9    and a "disparate impact" theory of discrimination – for which he must identify a "facially

10    neutral" employment practice that falls more harshly on a protected group and is not based on a

11    reasonable factor other than age.

12    1.    Disparate Treatment

13    Proof of disparate treatment requires a showing that the employer treats some people less

14    favorably than others because of their age. *International Bhd. of Teamsters*, 431 U.S. at 335 n.

15    15. To prevail on his ADEA claims under a "disparate treatment" theory, Plaintiff must prove

16    that he was a victim of intentional discrimination by producing direct evidence of discriminatory

17    intent or through the indirect, burden-shifting method articulated in *McDonnell Douglas Corp. v.*

18    *Green*, 411 U.S. 792 (1973), and *Burdine*, 450 U.S. 248 (1981). *See Rose v. Wells Fargo & Co.*,

19    902 F.2d 1417, 1422-24 (9th Cir. 1990). Courts apply the same standards and burdens to claims

20    under the WLAD. *See Weil v. Citizens Telecom Services Company, LLC*, 922 F.3d 993, 1002

21    (9th Cir. 2019); *Mikkelsen v. Public Utility Dist. No. 1 of Kittitas Cty.*, 189 Wash.2d 516, 526-27,

22    404 P.2d 464, 470 (2017).

23

REPORT AND RECOMMENDATION - 10

1    1.    <u>Direct Evidence of Discrimination</u>

2    Direct evidence is evidence, which if believed, proves the fact of discriminatory animus

3 without inference or presumption. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir.

4 2017) (emphasis and alteration omitted). "[S]tray remarks" will not qualify as sufficient direct

5 evidence to establish discrimination. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th

6 Cir. 1990).

7    In his deposition, Plaintiff identified Oman's reference to Plaintiff's status as the

8 "senior" data scientist, as suggesting that Plaintiff's age played a role in his termination. Dkt. 56,

9 Ex. A, AZ Dep. at 90:2-96:20. Oman testified that his use of the words "senior" or most "senior

10 data scientist on his team" was in recognition of Plaintiff's experience, expertise and knowledge.

11 Dkt. 57, Oman Dec., ¶ 14. Plaintiff admits that he does not know whether Oman was referencing

12 his age when he used the word "senior" data scientist in a performance evaluation. Plaintiff also

13 admits that of the data scientists on Oman's team at the time of the RIF, Plaintiff had the most

14 seniority and experience as a data scientist. Dkt. 56, Ex. A, AZ Dep. at 90:2-93:22. In his

15 opposition, Plaintiff asserts that another employee (Rodrick Megrew) was with the company

16 longer than him, but in his deposition, Plaintiff stated that Megrew left the company in 2017 or

17 2016, well before the RIF. At the time of the RIF, Plaintiff had been with the company the

18 longest. *Id.*, AZ Dep. at 92:24-93:12.

19    HERE also argues that, even if it were reasonable to assume that the word "senior" meant

20 Plaintiff's age, Oman's use of that word is, at most, a "stray remark" and not "direct evidence".

21 The Court agrees. Plaintiff provides no direct evidence supporting an inference that Oman's

22 referring to him as the most "senior" data scientist related to Plaintiff's age or was the reason

23 Oman selected Plaintiff for the RIF. *See, e.g., Pottenger v. Potlatch Corp.*, 329 F.3d 740, 747

REPORT AND RECOMMENDATION - 11

1   (9th Cir. 2003) (references to "old management team," "old business model," and "deadwood"

2   did not permit an inference that plaintiff was selected for a RIF due to his age).

3            2.    *McDonnell Douglass* Burden Shifting Method

4            To prove age discrimination under this burden shifting method in a RIF context a plaintiff

5   must show that he 1) is at least 40 years old; 2) met his employer's legitimate expectations; 3)

6   was subject to an adverse employment action; and 4) was treated less favorably than similarly

7   situated and substantially younger employees. *Palmer*, 794 F.2d at 537; *Reynaga v. Roseburg*

8   *Forest Products*, 847 F.3d 678, 690-91 (9th Cir. 2017). If the plaintiff can establish a prima facie

9   case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

10  employee's selection. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff can then avoid summary

11  judgment only by producing sufficient evidence from which a rational fact finder could infer that

12  the employer's proffered reason for dismissal was a pretext for age discrimination. *Palmer*, 794

13  F.2d at 537.

14           The evidence reflects that Plaintiff cannot establish a prima facie case because he cannot

15  show that he met his employer's legitimate expectations or that he was treated less favorably

16  than similarly situated and substantially younger employees. Moreover, Plaintiff cannot establish

17  that the articulated reasons Oman selected him in the RIF was pretextual.

18            a.    Employer's Legitimate Expectations

19           The undisputed record establishes that Plaintiff was not meeting HERE's

20  legitimate expectations at the time of the RIF. Oman documented repeated concerns about

21  Plaintiff's inability to adapt to HERE's collaborative work environment and inability to

22  provide practical solutions that could be implemented in HERE's products. Due to Plaintiff's

23  inability to address and correct these longstanding concerns, by the end of 2017 other members

1  of Oman's team were refusing to work with Plaintiff and Oman was on the verge of placing him

2  on a performance improvement plan. Dkt. 57, Oman Dec. at ¶ 9.

3        Although Plaintiff may disagree with Oman's assessments of his performance over the

4  years, Plaintiff fails to present any admissible evidence (other than the statistical analysis

5  referred to later herein), to rebut the record evidence or which would permit an inference of

6  pretext. In fact, none of Plaintiff's factual assertions in his opposition are properly supported

7  with admissible record evidence, *i.e.* a sworn affidavit, declaration, or deposition testimony, as

8  required by Fed. R. Civ. P. 56(c). *See also*, *Bradley v. Harcourt, Brace and Co*., 104 F.3d 267,

9  270 (9th Cir. 1996) ("An employee's subjective personal judgments" and self-serving comments

10 about his own "competence alone do not raise a genuine issue of material fact.").

11              b.    Less Favorable Treatment

12       There is no evidence that Plaintiff was treated less favorably than similarly

13 situated substantially younger employees. In fact, the record reflects that Plaintiff was not

14 similarly situated to other employees on Oman's team because the other employees did not have

15 the same difficulties as Plaintiff did in working with others or conforming their work product to

16 HERE's policies and business needs. Dkt. 57, Oman Dec. at ¶ 10.

17       Without admissible evidence to support an inference that Plaintiff was similarly

18 situated to other substantially younger employees on Oman's team who were not selected for the

19 RIF, Plaintiff cannot establish a prima facie case.

20              c.    Self-Created Statistical Analysis

21       Plaintiff created a statistical analysis (Dkt. 56, Warner Dec., AZ Dep., Ex. AZ 24)

22 and an additional analysis (Dkt. 60-5) (collectively referred to herein as the "Statistical

23 Analysis") purporting to show that employees age 40 and over were disproportionately impacted

by the RIF. HERE challenges Plaintiff's Statistical Analysis on the grounds that it does not meet

the standards for reliability necessary to be admissible in evidence under Fed. R. Evid. 702

through 705 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). HERE

argues that Plaintiff has not established that he can qualify as an expert in statistics and the

underlying methodology of the analysis is flawed because it fails to consider variables other than

age (such as performance or any of the other bases for selection provided in the Disclosure

Statement). Dkt. 55, p. 14.

        The Court is satisfied that, for purposes of this motion, Plaintiff has provided

sufficient background information on his statistical analysis abilities to qualify as an expert in

statistics. Dkt. 16, pp. 14-15. However, the Court concludes that Plaintiff's statistics are

insufficient in themselves to create a triable issue of intent to discriminate. "For [the plaintiff] to

show a prima facie case of disparate treatment based solely on statistics [they] must show a stark

pattern of discrimination unexplainable on grounds other than age." *Rose,* 902 F.2d at 1423

(citing *Palmer*, 794 F.2d at 539 (quotation omitted)). Thus, whatever the impact demonstrated by

statistical evidence is, in fact, the legal question is whether that impact is sufficiently gross or

stark that a court must infer that it was intended by the defendant. *Gay v. Waiters' and Dairy

Lunchmen's Union, Local No. 30,* 694 F.2d 5321, 552 (9th Cir. 1982). Statistical evidence

demonstrating that chance is not the more likely explanation are not by themselves sufficient to

demonstrate that [a protected classification" is the more likely explanation for an employer's

conduct," and a showing of statistical significance, in and of itself, does not create the sort of

"gross" or "stark" disparity that permits an inference of intentional discrimination. *Id.* at 551

(even a variance of 2 or 3 standard deviations which may be sufficient to make the data

"suspect" for a social scientist are not sufficient for a court to infer intentional discrimination

based on statistical evidence); *Rose*, 902 F.2d at 1423 (holding that the data was insufficient to create a triable issue of fact of intent to discriminate even when 73.5% of employees over fifty in a division were terminated compared to 34.1% between ages forty and forty-nine and 28.2% under forty).

The figures are not dissimilar here as 72% of employees over forty in Plaintiff's decisional unit were terminated compared to 28% under forty. *See* Dkt. 56, Warner Dec., AZ Dep., Exs. AZ 06 and AZ 24 (of the 1,753 HERE employees, 76 employees age 40 and older and 30 employees under age 40 were selected for termination). However, Plaintiff argues that for someone over sixty (he was terminated at age 63), the odds and probability of being laid off grows exponentially. Dkt. 23-2, pp. 4-5. Plaintiff breaks out the probability and odds based on several age groups (30 and younger; 31 to 40; 41 to 50; 51 to 60; and 61 and older) to come to this conclusion. This conclusion is neither complete nor probative because the use of aggregate data fails to account for the variable of performance, different decisionmakers across multiple departments using one or more of seven criteria to make their selections, employees located in different job locations, and numerous employment positions. *See Gay*, 694 F.2d at 552 ("regardless of how devastating or reliable the statistics may look, the issue remaining in disparate treatment cases whether a particular isolated historical event was discriminatory").

Plaintiff argues that he could have updated his statistical analysis to factor in the other reasons for termination contained in the Disclosure Statement as to all individuals included in the RIF, but he was not given access to that information. However, even if Plaintiff had included the other variables – and assuming that such statistical evidence was sufficient to meet his prima facie burden, such evidence would not create a material dispute of fact because any such updated analysis would still be insufficient to meet Plaintiff's burden of showing that the reason he was

1  selected for the RIF was pretextual. *See Schechner v. KPIX-TV*, 686 F.3d 1018, 1026 (9th Cir.

2  2012) (holding that plaintiff's statistical evidence was sufficient to meet prima facie burden, but

3  affirming summary judgment because plaintiffs produced insufficient evidence that the reasons

4  for their selection for a RIF was pretextual); *Rose*, 902 F.2d at 1423 (statistical evidence was

5  insufficient to defeat summary judgment in a RIF case where the plaintiffs offered no evidence

6  that age was considered in the decisions to discharge them and the employer offered a legitimate

7  non-discriminatory reason for their selection).

8      3.      Legitimate, Nondiscriminatory Reason for Employee's Selection

9      Based on HERE's Disclosure Statement, multiple decision-makers were asked to select

10 employees for termination based on one or more of seven reasons. There is no evidence of any

11 commonality either in the criteria used to make the decisions or the decisionmakers making the

12 decision. Oman selected who on his team should be included in the RIF, and data related to

13 dissimilar decisions made by many different decisionmakers for different reasons is irrelevant to

14 the issue of why Oman selected Plaintiff for the RIF. *See Rea v. Martin Marietta Corp.*, 29 F.3d

15 1450, 1456 (10th Cir. 1994) ("[A] plaintiff's statistical evidence must focus on eliminating

16 nondiscriminatory explanations for the disparate treatment by showing disparate treatment

17 between comparable individuals."). Oman testified that HERE implemented a RIF to cut costs

18 and better conform its workforce with changes in its business; Oman was instructed to reduce his

19 team by one headcount; and, Oman selected Plaintiff due to Plaintiff's difficulties working

20 collaboratively as a member of a team and developing systems and solutions that conformed to

21 HERE's existing practices and technical infrastructure as compared to other incumbent members

22 of Oman's team – which difficulties were previously set forth in Plaintiff's performance

23 assessments. Dkt. 57, Oman Dec. at ¶¶ 9-12, Exs. A-C.

1    Plaintiff asserts that he "has reasons to believe" that if HERE actually used the six bases

2    for selection provided in the Disclosure Statement, he would have been the last candidate for the

3    RIF. Dkt. 60, p. 6. Plaintiff also contends that Oman's evaluation of his performance cannot be

4    trusted because Oman had a "conflict of interest" in wanting to be the author of the solution

5    served to the client. Dkt. 60, p. 10. Here again, Plaintiff's disagreements with Oman do not

6    create an issue of material fact or permit an inference that the reasons Oman articulated for

7    selecting Plaintiff were pretextual. *See, e.g., Bradley*, 104 F.3d at 270 ("subjective personal

8    judgments of competence alone do not raise a question of material fact"). Moreover, as

9    previously noted, Plaintiff has not supported his factual assertions with admissible record

10   evidence such as a sworn affidavit, declaration, or deposition testimony. *See* Fed. R. Civ. P.

11   56(c).

12   Plaintiff next contends that shortly before the RIF was announced the Data Science group

13   was transferring to the OLP division and he was the only scientist in his group familiar with OLP

14   technology. Dkt. 60, p. 6. There is no record evidence that individuals within the Data Science

15   group would be working on the LOP assignments following the RIF. In addition, Oman testified

16   that he did not question Plaintiff's technical knowledge but selected him because he could not

17   consistently apply his technical expertise to practical solutions and did not work well as part of a

18   team. Dkt. 57, ¶¶ 9-12.

19   Plaintiff also asserts that "no consolidation of roles" was achieved with his RIF because

20   he passed his last project on to another data scientist and it was abandoned. Dkt. 60, p. 6.

21   However, there is no evidence vis-à-vis economies resulting from either Plaintiff's RIF or

22   collectively, as to the 105 other employees who were terminated. Similarly, Plaintiff contends

23   that HERE never provided him with salary information showing that cost savings were achieved.

REPORT AND RECOMMENDATION - 17

1    *Id.* Whether HERE achieved its cost saving goals does not call into question the motivation for

2    the RIF decisions. Even if there were no cost savings, an employee seeking to prove pretext

3    "cannot simply show the employer's decision was wrong, mistaken, or unwise." *Department of*

4    *Fair Employment and Housing v. Lucent Technologies, Inc.*, 642 F.3d 728, 746 (9th Cir. 2011).

5         Plaintiff also contends that "if I actually had such poor performance . . . Oman could fire

6    [him] at any moment without any RIF." Dkt. 60, p. 8. This observation is not inconsistent with

7    Oman's assessment that if Plaintiff had not been selected for the RIF, he would have been placed

8    on a performance improvement plan and subject to termination absent dramatic improvement.

9    Dkt. 57, pp. 3-4, ¶ 10.

10        Plaintiff also contends that he was later replaced by an intern, his former mentee, who

11   was "about twice younger" than him. Dkt. 30, p. 10. There is, however, no admissible evidence

12   to support this contention.

13        In sum, Plaintiff has failed to identify any admissible evidence demonstrating that

14   Oman's reason for selecting him for the RIF was pretextual or that he was selected because of

15   his age. Accordingly, the undersigned recommends that Defendant's motion for summary

16   judgment on Plaintiff's age discrimination claim under a disparate treatment theory of liability be

17   granted.

18   C.    "Disparate Impact" Theory of Liability

19        To establish a prima facie case of disparate impact liability, a plaintiff must (1) show a

20   significant disparate impact on a protected class or group; (2) identify the specific employment

21   practices or selection criteria at issue; and (3) show a causal relationship between the challenged

22   practices or criteria and the disparate impact. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190

23   (9th Cir. 2002). Even if a plaintiff establishes a prima facie case, an employer may still avoid

REPORT AND RECOMMENDATION - 18

1    liability in an age discrimination case if it establishes that its actions were based on "reasonable

2    factors other than age." *Meacham v. Knolls Atomic Power Lab*, 554 U.S. 84, 91 (2008).

3            Plaintiff has provided no evidence of any specific decision-making criteria that had a

4    disparate impact based on age and no evidence that his selection in the RIF was not based on a

5    "reasonable factor other than age." As previously noted, Plaintiff's Statistical Analysis is not

6    sufficient to meet his burden of establishing a prima facie case of a disparate treatment theory.

7    Likewise, the Court finds that it is not sufficient to meet his burden of establishing a prima face

8    case of disparate impact theory. The undisputed record evidence shows that the criteria used in

9    Plaintiff's selection for the RIF was relative performance, as assessed by the direct supervisor of

10   the individuals under consideration for the RIF. Plaintiff's Statistical Analysis aggregates all

11   individuals who were selected for the RIF by numerous different decisionmakers using six

12   different decision-making criteria and nowhere does Plaintiff identify which of these criteria he

13   is challenging. *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002) ("Plaintiffs generally cannot

14   attack an overall decision-making process in the disparate impact context, but must instead

15   identify the particular element or practice within the process that causes an adverse impact.");

16   *Adam v. Kempthorne*, 292 Fed.Appx. 646, 652 (9th Cir. 2008) (holding that where criteria used

17   in a reduction in force consists of different elements, statistical analysis of the reduction in force

18   as a whole was insufficient to establish a prima facie disparate impact case).

19           HERE correctly points out that that the criteria it used, *i.e.*, relative performance as

20   assessed by the direct supervisor of the individuals under consideration for the RIF, is inherently

21   based on a reasonable factor other than age. *See Meacham*, 554 U.S. at 91(to rebut prima facie

22   case of "disparate impact" discrimination, the employer need only show that the challenged

23   criteria were based on a reasonable factor other than age). Plaintiff's mere disagreement with the

REPORT AND RECOMMENDATION - 19

criteria used or how Oman applied the criteria, does not create a question of material fact. Instead, an employer need only show that it relied on a reasonable factor and an employee must show that this factor was unreasonable. The availability of other reasonable but less discriminatory factors is irrelevant to the "reasonable factor other than age" defense in an age discrimination case. *See Karlo v. Pittsburgh Glass Works,* 849 F.3d 61, 84 (3d Cir. 2017). Here, the undisputed admissible evidence establishes that Plaintiff was selected for the RIF based on his relative performance.

Accordingly, the undersigned recommends that Defendant's motion for summary judgment on Plaintiff's age discrimination claim under a disparate impact theory of liability be granted.

<u>CONCLUSION</u>

For the foregoing reasons, the undersigned recommends that the Court enter an order **GRANTING** Defendant's motion for summary judgment as to Plaintiff's federal and state law age discrimination claims (Dkt. 55) and **dismissing this case with prejudice**.

<u>OBJECTIONS AND APPEAL</u>

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **September 13, 2021**. The Clerk should note the matter for **September 15, 2021**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter

REPORT AND RECOMMENDATION - 20

will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed five (5) pages.  The failure to timely object may affect the right to appeal.

DATED this 30th day of August, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21